IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WW TRADEWINDS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| 1) TIMBERLAKES LIGHTHOUSE | § | Civil Action No. _____ |
| APARTMENTS, LP II, individually and d/b/a: | § | |
| • THE LIGHTHOUSE AT | § | |
| WILLOWBROOK, | § | |
| • LIGHTHOUSE APARTMENTS, | § | |
| • TIMBERLAKES LIGHTHOUSE, and | § | |
| • THE LIGHTHOUSE | § | |
| 2) SMC MANAGEMENT CORP., and | § | |
| 3) STEPHEN M. CHAPMAN, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT &
## APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiff WW Tradewinds LLC ("Plaintiff" or "Tradewinds") files *Plaintiff's Original Complaint and Application for Preliminary Injunction* against Defendants 1) Timberlakes Lighthouse Apartments, LP II, individually and d/b/a The Lighthouse at Willowbrook, Lighthouse Apartments, Timberlake Lighthouse, and The Lighthouse ("Lighthouse"); 2) SMC Management Corp. ("SMC"); and 3) Stephen M. Chapman ("Chapman") (collectively "Defendants").

NATURE OF THE CASE

1.    Plaintiff brings this case to stop Defendants from infringing on Plaintiff's copyright and trade dress in the Color Scheme of the Tradewinds Apartments.  Plaintiff also seeks to recover damages, Defendants' profits, full costs and reasonable attorney's fees.

<u>PARTIES</u>

2. <u>Plaintiff</u>.  WW Tradewinds LLC is an entity formed under the laws of the State of Texas with its principal place of business located at 2918 W. Park Row Dr., Pantego, Texas 76013-2041.  Tradewinds owns the Tradewinds at Willowbrook Apartments in Houston, Texas that are the subject of this suit.

3. <u>Defendant Timberlakes Lighthouse Apartments Limited Partners</u>.  Timberlakes Lighthouse Apartments, LP II ("Lighthouse") is a limited partnership doing business in the State of Texas.  Pursuant to Harris County, Texas public records, Lighthouse owns the Lighthouse at Willowbrook Apartments in Houston, Texas that are also the subject of this suit.  Defendant Lighthouse may be served by delivering the *Summons* and a copy of *Plaintiff's Original Complaint and Application for Preliminary Injunction* to Defendant Lighthouse's registered agent for service of process, Joseph O. Slovacek, at Hoover Slovacek, LLP, 5847 San Felipe, Suite 2200, Houston, Texas 77057.

4. <u>Defendant SMC Management Corp.</u>  Defendant SMC Management Corp. ("SMC") is a foreign corporation doing business in the State of Texas.  Upon information and belief, SMC is either an owner, general or limited partner of the owner, or manages the Lighthouse Apartments.[1]  Defendant SMC has not designated, nor does Defendant SMC maintain, a registered agent in the State of Texas.  The causes of action asserted herein arise

---

[1]  "SMC Management Corporation is a fully integrated Boston-based real estate investment, development and management firm established in 1984 to acquire and develop predominantly multifamily residential properties and select commercial properties on behalf of itself and its investors."  SMC MGMT. CORP., http://www.smcmgtco.com/ (last visited May 8, 2013).  One of properties identified within SMC's portfolio is:

|  |  |
|---|---|
| Lighthouse Apartments | 336 Units – Class A Garden Apartments |
| Houston, Texas | Market Rate Rental |
| http://www.thelighthouseatwillowbrook.com | |

from and are connected with purposeful acts committed by Defendant SMC in the State of Texas.  Accordingly, pursuant to CIV. PRAC. & REM. CODE § 17.026 and TEX. BUS. ORG. CODE §§ 5.251 and 5.252, Defendant SMC may be served with process by sending two (2) duplicate copies of the *Summons* and *Plaintiff's Original Petition and Application for Preliminary Injunction* by certified mail, return receipt requested to the **Secretary of State of Texas, acting as the agent for service of process of Defendant SMC MANAGEMENT CORP., at the office of the Secretary of State, Statutory Document Section, P.O. Box 12079, Capitol Station, Austin, Texas 78711.**  Pursuant to the Texas Business Organization Code, Plaintiff requests that the Secretary of State of Texas immediately send one of the copies to Defendant SMC, addressed to Defendant SMC's most recent home office address, which is: SMC Management Corp. c/o Stephen Chapman at 100 Galen Street, Suite 301, Watertown, Massachusetts 02472-4540.

5. <u>Defendant Stephen M. Chapman</u>.  Stephen M. Chapman ("Chapman") is an individual residing in Boston, Massachusetts.  Defendant Chapman is jointly liable and responsible for the infringing activity as a result of his: 1) vicarious liability,[2] 2) contributory infringement[3] (by authorizing or approving the infringing acts), and 3) actual participation.[4] *See* Count V, *infra*.  Defendant Chapman may be served by delivering the *Summons* and a copy of *Plaintiff's Original Complaint and Application for Preliminary Injunction* to him at 2 Avery

---

[2] Chapman has the right and ability to supervise the infringing activity and also has a direct financial interest in the infringing activity.

[3] Chapman knew or had reason to know of the direct infringement by the Owner and Management Company, and intentionally induced, caused or materially contributed to their direct infringement.

[4] Chapman's authorization or approval of the infringing activity is sufficient actual participation in the wrongful acts to make him individually liable.

Street, PH 1, Boston, Massachusetts 02111-1002, or 100 Galen Street, Suite 301, Watertown, Massachusetts 02472-4540.

STATEMENT OF JURISDICTION

6.      Federal Question Jurisdiction.   This action arises under federal statutes, the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*., and section 43(a) of the Lanham Act of 1934, 15 U.S.C. § 1125.   Therefore this court has jurisdiction of this matter under 28 U.S.C. § 1338.

7.      Diversity of Citizenship Jurisdiction.   Jurisdiction may also arise because this action involves citizens of different States and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.   However, without jurisdictional discovery, Plaintiff is unable to determine the citizenship of each partner of Defendant Lighthouse.

8.      Pendent Jurisdiction over State Law Claims.   This court also has pendent jurisdiction over Plaintiff's state law claims.[5]

VENUE

9.      Venue is proper in this District because Defendants' unlawful conduct occurred in this District.

---

[5]  *See e.g. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S. Ct. 614, 618, 98 L. Ed. 2d 720 (1988) ("a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' 383 U.S., at 725, 86 S.Ct., at 1138.").

STATEMENT OF THE CLAIM

THE PROPERTIES

10.     <u>Lighthouse Apartments</u>.   Since December 4, 2006, Defendant Lighthouse has owned the real property located at 12333 N. Gessner Road #336, Houston, Texas 77064.  The improvements on Defendant Lighthouse's real property are a Clubhouse and fourteen (14) buildings of residential apartments.   There are 336 units, which along with amenities, are available for lease.  HCAD shows the 2012 value of the real property and improvements on this property to be $22,300,000.00.

11.     <u>Tradewinds Apartments</u>.   Since October 12, 2012, Plaintiff has owned the real property located at 12331 N. Gessner Road #374, Houston, Texas 77064.  The improvements on Plaintiff's real property are a Clubhouse and seventeen (17) buildings of residential apartments. There are 374 units, which along with amenities, are available for lease.  HCAD shows the 2012 value of the real property and improvements on this property to be $26,570,874.00.

12.     <u>Apartment Similarities</u>.    The Tradewinds Apartments and the Lighthouse Apartments are located on each side of N. Gessner Road as shown by the aerial photograph attached as Exhibit "A."  The architecture of each property's respective apartment buildings are similar, if not identical.  The buildings are 3 stories, built within two years of each other, with similar materials and a similar ratio of units available (with the largest number of 1 bedroom floor plans available, some 2 bedrooms, and a few three bedrooms).  They sit on similar topography and landscape and were originally built as Phase I and Phase II by the same developer.  Until purchased by Tradewinds, both properties were managed by Defendants' property management company, Riverstone Residential Group, LLC.

13.    <u>Apartment Distinctions</u>.    At the time Plaintiff purchased the Tradewinds Apartments, the only discernible distinction between the two properties was that Defendant Lighthouse had the road frontage for its clubhouse and office on N. Gessner Rd., while Plaintiff Tradewinds Apartments only had an entrance to its clubhouse and office by way of an unnamed side street.    *See* Exhibit "A" as well as Exhibit "B" that shows the entrance for Lighthouse directly on N. Gessner Rd. and the side street off of N. Gessner Rd. that leads to the entrance for Tradewinds.   Because of the advantageous location of Defendant Lighthouse's clubhouse and office on N. Gessner Rd. frontage, potential tenants coming to Plaintiff's location would see the Lighthouse Clubhouse from N. Gessner, think they arrived at Plaintiff's location, and go in to Defendant Lighthouse's leasing office rather than that of Plaintiff.

14.    <u>Trade Dress - the "Color Scheme"</u>.    Because of the similarities between the Tradewinds Apartments and the Lighthouse Apartments, including identical paint scheme and architecture, it was particularly important that Tradewinds develop a unique and distinctive aesthetic for its community.   Plaintiff also needed a distinctive trade dress because the Lighthouse's clubhouse and office were visible on frontage on N. Gessner Rd., while Plaintiff Tradewinds' clubhouse and office were located on an unnamed side street.   Thus, Tradewinds invested in a distinct overall look that would distinguish its product from that of its competitor.

15.    Plaintiff hired The Color People, who are self-described as "Pioneers in the color and consulting field, we are color consultants that design market driven color schemes for all style of architecture and architectural products."[6]   At a cost of $4,098.67, The Color People designed a color scheme specifically for the Tradewinds Apartments that is described as, "visual arts, drawings, and painting including the Color Scheme and Final Paint Plan for Apartments,

_____

[6] *See* COLOR PEOPLE, http://colorpeople.com/ (last visited May 8, 2013).

which includes, without limitation, the color and finish choices, incorporating five different colors and two different finishes with other elements of the Apartment and Clubhouse structures (wood, metal, stone and stucco) on the main body, panels, railings, door trim, window trim, ceilings, doors, fascia, and garage doors" (collectively, referred to herein as the "Color Scheme").  The Color Scheme, including the distinctive colors and final paint pattern is attached hereto as Exhibit "C."  The photographs attached to Exhibit "C" also depict the prior color scheme of both Tradewinds and Lighthouse.

16.    <u>Publication of the Color Scheme</u>.  Plaintiff hired United Renovations to perform the painting services for the Color Scheme at a cost (with respect to the painting) of $174,555.00. United Renovations completed the first building at Tradewinds on February 8, 2013.  In addition, Tradewinds spent almost $17,000 installing new signage and a monument that matches the Color Scheme.

17.    <u>The Infringement – Committed Willfully</u>.  On March 22, 2013, Tradewinds noticed that Lighthouse was painting the exterior of one of its buildings precisely the same as the Tradewinds' Color Scheme.   As a result, Plaintiff's employee, Crystal Brown, contacted Michelle Nixon, the Property Manager for SCM and Lighthouse.  Ms. Nixon admitted to Plaintiff that "it is the owners' desire to paint Lighthouse the exact colors of Tradewinds." When questioned further about why they would want to look exactly like Tradewinds, the Lighthouse property manager stated: "it's not personal, it's just business."

18.    Following that conversation, the Regional Manager for Tradewinds, Suzanne Schmidtke, contacted Tammy Rodriguez, the Regional Manager with SCM and Lighthouse, to determine if Lighthouse intended to copy Tradewinds' Color Scheme.  Tammy Rodriguez apologetically confirmed that it was Lighthouse's intent to copy the Color Scheme, stating that it

was not the type of thing the local agents would do, then blaming the owners.  Specifically, Rodriguez said: "yes, that is the owners' wishes and we are only following them."

19.     <u>The Comparison</u>.  Photographs showing Tradewinds' implementation of the Color Scheme, as well as Lighthouse copying the same new Color Scheme is attached as Exhibit "D."

20.     <u>The Copyright Application</u>.   In addition to being Tradewinds's trade dress, the Color Scheme is also a copyrightable work.  On April 24, 2013, Plaintiff submitted its copyright application for the Color Scheme.  Attached as Exhibit "E" is a proof of Plaintiff's copyright application.  Pursuant to the "application approach" followed by the Fifth Circuit, registration of Plaintiff's copyright for the Color Scheme is effective upon the application date.[7]

COUNT I

COPYRIGHT INFRINGEMENT

21.     To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

22.     The Color Scheme is an artistic creation capable of copyright protection because it incorporates color with other elements in an original combination and arrangement.

23.     Since February 8, 2013, the Color Scheme has been published by Plaintiff.

24.     Plaintiff has not authorized any use, license or copy of the Color Scheme.

25.     Plaintiff has complied with the Copyright Act, and all other laws governing copyright, including the exclusive rights and privileges in and to the copyright of the Color Scheme.

---

[7] *See Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984).

26.     Plaintiff applied for a copyright registration on April 24, 2013.  As a result of the registration, Plaintiff owns a valid copyright in the Color Scheme as of the April 24, 2013 registration date.

27.     Without Plaintiff's consent, Defendants have intentionally copied the Color Scheme.  Defendants copied constituent elements of Plaintiff's work that are original.

28.     Defendants' infringing paint work is identical to the Color Scheme. Alternatively, Defendants' infringing paint work is substantially similar to the Color Scheme.

29.     To the extent there are any disparities between Defendants' copy of the Color Scheme and the original, an ordinary observer would overlook them and regard the aesthetic appeal as the same.

30.     All of the Defendants' acts were performed without the permission, license, or consent of Plaintiff.

31.     Copyright Act Violation.  Defendants' reproduction, publication and display of the Color Scheme as described herein constitutes infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 506.

32.     Damages & Relief Sought.  By reason of Defendants' acts of copyright infringement, Plaintiff has suffered and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, and a dilution of the value of its rights.

33.     Unless restrained and enjoined, Defendant's acts of copyright infringement as alleged above will cause Plaintiff irreparable injury as more fully described herein.

34.     Pursuant to 17 U.S.C. § 504(c)(1), Plaintiff seeks statutory damages against Defendants, jointly and severally, up to the maximum amount available ($30,000).   As

Defendants' infringement was willful, Plaintiff also seeks up to the maximum amount of statutory damages ($150,000) pursuant to 17 U.S.C. § 504(c)(2).

35.     Alternatively, pursuant to 17 U.S.C. § 504(b), Plaintiff seeks its actual damages against Defendants, jointly and severally, as a result of Defendants' infringement including the costs to obtain and implement the Color Scheme, as well as any profits of Defendants attributable to the infringement.

36.     In addition, pursuant to 17 U.S.C. § 505, Plaintiff seeks full costs and reasonable attorneys' fees as provided herein.

COUNT II

TRADE DRESS INFRINGEMENT
SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(A)[8]

37.     To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

38.     Trade Dress.  As referred to herein, Plaintiff's trade dress is referred to as the Color Scheme as applied to the Tradewinds Apartments.[9]

39.     Distinctiveness & Non-Functionality.  To distinguish itself in the marketplace, Plaintiff created the Color Scheme. The Color Scheme, through its combinations of colors and features, created a distinctive visual impression, identifying the Tradewinds Apartments.[10]

---

[8]   15 U.S.C. § 1125(a)(1) protects against infringement of unregistered and registered marks, trade dress and false advertising.

[9]   *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765, 112 S. Ct. 2753, 2755, 120 L. Ed. 2d 615 (1992) (extending trade dress protection to the overall motif of a restaurant).

[10]   *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (holding that a company could protect the overall appearance of its facilities as trade dress).

40.     The Color Scheme is original and unique, and acts as a symbol that distinguishes Plaintiff's apartments and identifies their source, without serving any other significant function. The Color Scheme makes Plaintiff distinctive in the marketplace, thereby indicating the source of the apartments it dresses.[11]   The Color Scheme appears in advertisements for the Plaintiff's apartments.

41.     The Color Scheme is primarily nonfunctional since the combination of colors and graphic elements are neither essential to use of the apartments nor material to their cost or quality.

42.     <u>Infringement</u>.   Without Plaintiff's consent, Defendants identically copied the Color Scheme for Defendants' apartments, which compete directly with Plaintiff's apartments. Defendants are using the Color Scheme in commerce, that is, in connection with the offering for lease their apartments and services.

43.     <u>Confusion</u>.   The result, of course, is that Defendants' use of the Color Scheme has created a likelihood of confusion, mistake and deception.

44.     Plaintiff is entitled to a presumption of confusion, because of Defendants' intentional, identical copying of Plaintiff's trade dress. Alternatively, the substantial risk of confusion is readily apparent because of a remarkably similar use by Defendants.

45.     Defendants' copying of the Color Scheme was calculated to, and carries with it, a likelihood of confounding an appreciable number of reasonably prudent renters exercising ordinary care.  Defendants have changed the overall appearance of their property to be so similar to Plaintiff's property that consumers who eventually figure out that they are at Defendants'

---

[11]   *See id.* ("The purpose of trade dress protection, like trademark protection, is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products.") (internal quotation marks omitted).

apartments (and not Plaintiff's) do so only after they have already arrived in Defendants' Clubhouse and met with Defendants' sales agents.

46.     <u>Lanham Act Violation</u>.  Defendants' actions constitute false designation of origin and false description or representation tending falsely to describe Defendants' Lighthouse apartments as those of the Tradewinds Apartments in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     With knowledge of the falsity of such designation of origin, such description, and such representation by painting its own buildings the same as Plaintiffs, Defendants have entered its infringing color scheme in interstate commerce.

48.     <u>Damages & Relief Sought</u>.  By reason of Defendants' willful false designation of origin and false description and representation as alleged above, Defendants are liable to Plaintiff for the actual damages suffered by Plaintiff as a result of Defendants' acts and any additional profits earned by Defendant as a result of their acts.

49.     Plaintiff's actual damages include substantial damage to its business in the form of diversion of trade, loss of profits, and a dilution of the value of its rights, all in amounts which are not yet fully ascertainable.

50.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff seeks, in the court's discretion (a) enhanced damages in a sum not to exceed three times the amount found as actual damages; and (b) discretionary damages in a sum the court finds to be just based on Defendants' willful infringement and the circumstances of this case.

51.     Unless Defendants' actions are restrained and enjoined, Plaintiff will suffer irreparable injury as described below.  Therefore, pursuant to 15 U.S.C. § 1116, Plaintiff seeks injunctive relief as provided below.

52.     As this is an exceptional case, Plaintiff is entitled to its reasonable attorney's fees and costs of this civil action as authorized by 15 U.S.C. §§ 1117 and 1125(c)(2).

COUNT III

COMMON LAW - UNFAIR COMPETITION BY MISAPPROPRIATION[12]

53.     To the extent not inconsistent and solely in the alternative should Plaintiff fail to obtain a copyright registration, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

54.     Plaintiff paid for the creation of a unique and distinctive product, namely the Color Scheme.  The Color Scheme is used by Plaintiff in competition with Defendant, namely to differentiate two similar products in architecture, amenities, and design.

55.     Defendants' copying and use of the same Color Scheme in competition with Plaintiff gives Defendants a special competitive advantage because Defendant was not burdened with the cost of creating the Color Scheme and it destroys the distinction that Plaintiff paid in implementing the Color Scheme.

56.     Plaintiff has suffered commercial damage in the form of diversion of trade, loss of profits, and a dilution of the value of its rights.

57.     Unless restrained and enjoined, Defendant's acts of unfair competition as alleged above will cause Plaintiff irreparable injury as provided below.

---

[12] *Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772, 788 (5th Cir. 1999) (Citing the elements of an unfair competition by misappropriation claim from *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied) as "(i) the creation by plaintiff of a product through extensive time, labor, skill and money; (ii) the use of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the product; and (iii) commercial damage to plaintiff.").

COUNT IV

COMMON LAW - UNJUST ENRICHMENT[13]

58.     To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

59.     Plaintiff paid $4,098.00 to obtain the Color Scheme and $174,555.00 to implement the Color Scheme for the benefit of differentiating the Tradewinds Apartments from the Lighthouse Apartments.  Plaintiff also paid almost another $17,000.00 in purchasing and installing new signage and monument that matched the new Color Scheme.  By wrongfully obtaining and using the Color Scheme and depriving Plaintiff of its benefits, Defendants obtained, and continue to obtain, benefits from Plaintiff by the taking of undue advantage.

60.     Defendants will be unjustly enriched if they are able to keep the benefits of the Color Scheme without payment for same.

61.     Plaintiff seeks damages from Defendants for unjust enrichment in an amount within the jurisdictional limits of the Court, specifically including the costs to obtain and implement the Color Scheme as set out above, as well as additional damages for the diversion of trade, loss of profits, and a dilution of the value of Plaintiff's rights.

COUNT V

ACTION IN EQUITY

62.     To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

---

[13]     *See e.g.*, *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.").

63.    <u>Liability</u>.    Plaintiff asserts a claim in equity to prevent a grave miscarriage of justice.[14]    Namely, allowing Defendants to willfully misappropriate the Color Scheme and use it as its own in order to confuse potential lessees and unfairly compete with Plaintiff would be a miscarriage of justice.

64.    <u>Damages</u>.    Plaintiff seeks the cost to obtain the Color Scheme (4,098.67), implement the Color Scheme ($175,550.00), install new signage and monuments (approximately $17,000), as well as Defendants profits form the conduct in misappropriating the Color Scheme.

COUNT VI

<u>CONSPIRACY / AIDING & ABETTING – JOINT & SEVERAL LIABILITY</u>

65.    To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

66.    <u>Conspiracy</u>.    The Defendants, in a collaborative effort, conspired to infringe on Plaintiff's copyright and trade dress, as well as engage in unfair competition and unjust enrichment.    Defendants Lighthouse, SCM, and Chapman, each specifically agreed (a meeting of the minds) that (a) Lighthouse, SCM, and Chapman would wait to choose a paint scheme for the Lighthouse Apartments until such time as Plaintiff painted the Tradewinds Apartments, (b) Lighthouse, SCM, and Chapman would copy Plaintiff's Color Scheme, and (c) Lighthouse, SCM, and Chapman would continue to create the confusion that Plaintiff set out to eliminate through a distinctive painting pattern.    Defendants acted as agents of each other and in concert and conspired to accomplish certain of the unlawful purposes stated in the claims asserted herein.

---

[14]    *See United States v. Beggerly*, 524 U.S. 38, 45, 47, 118 S. Ct. 1862, 1867, 1868, 141 L. Ed. 2d 32 (1998) (allowing an "independent action sounded in equity" to prevent "a grave miscarriage of justice").

67.     <u>Aiding & Abetting – Assisting or Encouraging</u>.  Lighthouse, SCM, and Chapman each committed the statutory violations and tortious conduct as set out herein.  Each Defendant had knowledge of the other Defendants' conduct and had the intent to assist the other in committing the conduct.   Each Defendant provided the other with assistance and/or encouragement.   Such assistance and encouragement was a substantial factor in causing the statutory violations and torts.

68.     <u>Aiding & Abetting – Assisting and Participating</u>.   Lighthouse, SCM, and Chapman each committed the statutory violations and tortious conduct as set out herein.  Each Defendant provided substantial assistance to the other in accomplishing the violations and tortious results.  Each Defendant's own conduct, separate from the other Defendants' conduct, assisted or participated in the violations and tortious conduct against Plaintiff.  Each Defendant's participation was a substantial factor in causing the violations and torts.

69.     As a proximate result of Defendants' conspiracy and aiding and abetting, Plaintiff seeks its damages (statutory and actual), full costs, and attorneys' fees as set out herein.

COUNT VII

EXEMPLARY DAMAGES

70.     To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

71.     Pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1), (2) and (3), exemplary damages may be awarded when the injury or harm to which the claimant seeks recovery results from malice, fraud, and/or gross negligence.  Plaintiff seeks exemplary damages against each Defendant in an amount within the jurisdictional limits of the Court, considering among other things, the degree of culpability of each Defendant, the extent to which each Defendant's

conduct offends a public sense of justice and propriety, the costs and inconvenience incurred by Plaintiff in prosecuting this action, and the net worth of each Defendant.

72.     More specifically, Defendants acted with no regard to morals by engaging in a pattern of behavior to misappropriate Plaintiff's Color Scheme and use the Color Scheme on its own buildings in an effort to divert business away from Plaintiff.  Therefore, Plaintiff seeks an award of exemplary damages sufficient to punish each Defendant and deter such deceitful conduct in the future.

73.     Additionally, pursuant to TEX. CIV. PRAC. & REM. CODE § 41.008(13), the exemplary damage limitations are not applicable.[15]

COUNT VIII

ATTORNEYS' FEES

74.     To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

75.     As a result of Defendants' copyright infringement and trade dress infringement, Plaintiff employed The Korn Diaz Firm and Craddock Davis & Krause, LLP to represent it.

76.     Copyright Act.  Pursuant to 17 U.S.C. § 505, Plaintiff seeks costs and reasonable attorneys' fees related to Defendants' infringement of Plaintiff's copyright.

77.     Lanham Act.  Further, because this case involves the culpable conduct of Defendants, attorney fees and costs should be awarded to Plaintiff under to 15 U.S.C § 1117(a).[16]

---

[15]   As Plaintiff's costs to obtain and implement the Color Scheme that was misappropriated and infringed by Defendants is in excess of $20,000, the theft involved is punishable as a felony of the third degree or higher pursuant to TEX. PEN. CODE § 31.03(e)(4).

COUNT IX

APPLICATION FOR INJUNCTIVE RELIEF

78.     To the extent not inconsistent, Plaintiff incorporates the allegations set forth in the above paragraphs the same as if set forth herein.

79.     Copyright Act.  Under the Copyright Act, 17 U.S.C. § 502(a), a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  When an infringement occurs, the copyright owner is entitled to an injunction prohibiting further infringement.[17]  Entitlement to monetary damages is not an element of a copyright claim seeking injunctive relief.[18]

80.     Lanham Act.  Under the Lanham Act, 15 U.S.C. § 1116 (a), a court may "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right."   In the context of trademark litigation, irreparable harm is generally presumed if a plaintiff demonstrates a likelihood of consumer confusion.[19]  "It is not necessary for plaintiff in a trademark or unfair competition case to prove

---

[16]  In "exceptional cases" the court may award reasonable attorney fees under the Lanham Act. *See e.g.*, *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) ("We were persuaded by the cases in other circuits holding that 'a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.''").

[17]  *See Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572, 577 (E.D. Tex. 2007).

[18]  *See Predator Int'l Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2013 U.S. Dist. LEXIS 36866, at *18 (D. Colo. Mar. 18, 2013).

[19]  *See Plum Island Soap Co., LLC v. Danielle & Co.*, No. 11-11033-NMG, 2011 U.S. Dist. LEXIS 93652, at *10 (D. Mass Aug. 19, 2011).

any past or present actual damages since one of the major benefits of injunctive relief is that it can be obtained prior to actual damage so as to prevent that damage from occurring."[20]

81.    Common Law.  Pursuant to TEX. CIV. PRAC. & REM. CODE § 65.011, "Grounds Generally.  A writ of injunction may be granted if: . . . (3) the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions."[21]

82.    Reasons for Injunctive Relief.  Plaintiff is entitled to injunctive relief for the following reasons:

    a.    Because actual and imminent confusion has been shown through identical copying by a direct competitor, Plaintiff has suffered irreparable injury;

    b.    While a remedy at law would provide a degree of monetary relief, it will not compensate for the injury to Plaintiff's reputation or necessarily prevent future trademark or copyright infringement.[22] A remedy at law would also be inadequate to compensate Plaintiff because Defendants'

---

[20]  Comment to Ninth Circuit Pattern Jury Instructions 15.6 (citing MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:2 (4th ed. 2007)).

[21]  *See e.g. Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 325 (5th Cir. 1997) ("The district court has traditionally had the equitable power to fashion any remedy necessary and appropriate to do justice in a particular case.  *Hecht v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1943). 'The essence of equity jurisdiction has been the power of the chancellor to do equity and to mold each decree to the necessities of the particular case. Flexibility rather than rigidity have distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between public interest and private needs....' *Id.*

The district court in contemplation of exercising its traditional equitable powers must weigh several factors to determine whether a party's request for equitable relief should be granted.  *Id.*  Among the factors that must be considered are: 1) the probability of irreparable damage to the moving party in the absence of relief; 2) the possibility of harm to the non-moving party if relief is granted; 3) the likelihood of success on the merits; and 4) the public interest.  *United States v. Price,* 688 F.2d 204, 211 (3rd Cir.1982); *accord A.O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 525–26 (3rd Cir.1976).").

[22]  *See Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Houston Inc.*, No. H-07-0170, 2007 WL 2363148, at *8 (S.D. Tex. Aug. 16, 2007); *T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 3:08-CV-00341, 2009 WL 2003369, at *4 (N.D. Tex. July 10, 2009); *WB Music Corp. v. Big Daddy's Entm't, Inc.*, No. EP-05-CA-267-PRM, 2005 WL 2662553, at *3 (W.D. Tex. Oct. 18, 2005).

appropriation of the Color Scheme deprives Plaintiff of its unique vision for its property.[23]

c.   Because Plaintiff has shown direct and intentional copying of the Color Scheme, it has a substantial likelihood of success on the merits;

d.   Defendants' actions, as described above, will nullify the right of plaintiff to the exclusive use, free from copyright and trademark infringement, of the Color Scheme.  Unless restrained, Defendants' conduct will impair the goodwill, and ultimately, the value of Plaintiff's business, and make operating the apartments more difficult and more expensive, such as additional marketing expenses, the addition of other features to distinguish the Tradewinds Apartments from its competitor, the Lighthouse Apartments, and the inconvenience and cost of starting the selection of colors and re-painting the entire complex.  Requiring Defendants to restrain from future infringement will cause them minimal to no harm, and any potential harm caused by requiring them to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted;[24]  and

e.   The public interest weighs in favor of copyright, trademark and misappropriation enforcement because there is a public interest in the protection of a party's goodwill, intellectual property, and trade dress as well as avoiding confusion in the public.  Issuing an injunction will serve the public interest goals of preventing consumer confusion and protecting the trade dress holder's property interest.  The public interest is also served by protecting the creative process through the enforcement of copyrights and trade dress.  The fundamental purpose of copyright is to serve the public interest by encouraging learning and the advancement of knowledge through a system of exclusive, but limited, rights for authors and copyright owners. An injunction serves this public interest.

83.   Plaintiff requests that the court sign and cause to be entered an order that

Defendants and each of their officers, agents, servants, employees, attorneys, and all other

---

[23]   *See Cynthia Hunt Prods., Ltd.*, 2007 WL 2363148, at *8 (no adequate remedy at law where injuries cannot be *fully* compensated or measured in money) (emphasis added); *Warner Bros. Records, Inc. v. Briones*, No. SA-05-CA-0075-XR, 2005 WL 2645012, at *4 (W.D. Tex. Sept. 20, 2005) (Finding "no adequate remedy at law because Plaintiffs' injury cannot be *fully* compensated or measured in money.").

[24]   *See T-Mobile USA Inc.*, 2009 WL 2003369, at *4.

persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise:

      a.    cease use of any of Plaintiff's trade dress, the Color Scheme, or any similar variations;

      b.    neutralize the Color Scheme from the Defendants' property (including apartment and clubhouse structures) which includes, without limitation, the color and finish choices, incorporating the five different colors with other elements of the apartment and clubhouse structures (wood, metal, stone and stucco) on the main body, panels, railings, door trim, window trim, ceilings, doors, fascia, and garage doors.  In order to neutralize the Color Scheme as required herein, the Defendants' property  must be painted  in a color scheme that does not result in a variation similar to the Color Scheme; and

      c.    may not engage in any course of conduct likely to cause confusion, deception, or mistake with respect to Plaintiff's trade dress or appropriate the goodwill and reputation of Plaintiff's trade dress.

### REQUEST FOR PERMANENT INJUNCTION

84.    Plaintiff asks the Court to set its request for permanent injunction for a full trial on the merits and, after the trial or appropriation motion, issue a permanent injunction against Defendants as demanded below.

### DEMAND FOR JUDGMENT

For the foregoing reasons, Plaintiff prays for judgment against Defendants, jointly and severally, awarding the following relief:

      a.    A Preliminary Injunction requiring Defendants 1) Timberlakes Lighthouse Apartments LP II, individually and d/b/a The Lighthouse at Willowbrook, Lighthouse Apartments, Timberlake Lighthouse, and The Lighthouse; 2) SMC Management Corp.; and 3)  Stephen M. Chapman and their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them (specifically including their management company, Riverstone Residential Group, LLC), who receive actual notice of the order by personal service or otherwise, directly or indirectly:

       (1)     cease the use of any of Plaintiff's trade dress, the Color Scheme, or any similar variations;

       (2)     neutralize the Color Scheme from the Defendant's property (including apartment and clubhouse structures which includes, without limitation, the color and finish choices, incorporating the five different colors with other elements of the apartment and clubhouse structures (wood, metal, stone and stucco) on the main body, panels, railings, door trim, window trim, ceilings, doors, fascia, and garage doors.  In  order to neutralize the Color Scheme as required herein, the Defendants' property  must be painted  in a color scheme that does not result in a variation similar to the Color Scheme; and

       (3)     not engage in any conduct or course of conduct likely to cause confusion, deception, or mistake with respect to Plaintiff's trade dress or appropriate the goodwill and reputation of Plaintiff's trade dress.

b.     A Permanent Injunction providing the same injunctive relief sought herein for the Preliminary Injunction;

c.     Actual damages in an amount within the jurisdictional limits of the Court;

d.     Separate awards of exemplary damages against each Defendant in a sum determined by the trier of fact;

e.     Statutory damages pursuant to the Copyright Act and Lanham Act, including treble damages and discretionary damages;

f.     Reasonable attorneys' fees;

g.     Prejudgment and post-judgment interest as allowed by law;

h.     Full costs, or alternatively, Court costs; and

i.     Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

By: _____

ANDREW R. KORN
Attorney-in-charge
State Bar No. 11683150
Southern District Bar No. 13801

THE KORN DIAZ FIRM
4221 Avondale Avenue
Dallas, Texas 75219
(214) 521-8800 - Telephone
(214) 521-8821 - Telecopy

AND

JOHN W. BOWDICH
State Bar No. 00796233
Southern District Bar No. 1058774

CRADDOCK DAVIS & KRAUSE LLP
3100 Monticello Ave., Suite 550
Dallas, Texas 75205
(214) 750-3550 – Telephone
(214) 750-3551 – Telecopy

ATTORNEYS FOR PLAINTIFF
WW TRADEWINDS, LLC